2015 UT App 294

## THE UTAH COURT OF APPEALS

SANDRA GAIL FOGLEMAN,
Petitioner,
*v.*
LABOR COMMISSION, KOLOB CARE AND REHABILITATION CENTERS,
AND PENNSYLVANIA MANUFACTURERS
ASSOCIATION INSURANCE COMPANY,
Respondents.

Opinion
No. 20141137-CA
Filed December 10, 2015

Original Proceeding in this Court

Virginius Dabney and Sonia Huntsman Ickes,
Attorneys for Petitioner

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Eric J. Pollart, Christin Bechmann, and Mark A.
Riekhof, Attorneys for Respondents Kolob Care and
Rehabilitation Centers and Pennsylvania
Manufacturers Association Insurance Company

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

PEARCE, Judge:

¶1     Sandra Gail Fogleman seeks judicial review of the denial of her application for permanent total disability compensation. We conclude that the Utah Labor Commission's Appeals Board (the Board) did not err in affirming an administrative law judge's denial of Fogleman's claim for permanent total disability compensation. We also conclude that the Board did not err by declining to award Fogleman compensation for the treatment of conditions it found to be medically unrelated to her industrial

accident. Accordingly, we decline to disturb the Board's decision.

BACKGROUND[1]

¶2     Kolob Care and Rehabilitation Centers (Kolob) is a medical care facility.[2] Fogleman worked as Kolob's receptionist. Her duties included greeting visitors, answering the telephone, filing paperwork, and interacting with vendors. Additionally, Fogleman handled Kolob's mail, which required her to visit an on-site mailbox by walking through a parking lot and up a "slight incline across some stepping stones."

¶3     While delivering mail to the mailbox one day, Fogleman fell and landed on her hands and knees (the Work Accident). Fogleman believes that an unstable stepping stone "'flipped' causing her to fall." Because Fogleman was carrying the mail in her left hand, "[s]he felt most of the force of the fall on her right knee, hip and hand."

¶4     After a coworker cleaned her wounds, Fogleman finished her work shift. Later that day, Fogleman visited an urgent care provider. The clinic assessed Fogleman with "contusions and abrasions" on her hands and knees. Fogleman's hands eventually healed, but her knee and hip pain continued.

---

1. In reviewing the Board's decision, "we view the facts in the light most favorable to [the Board's] findings." *Swift Transp. v. Labor Comm'n*, 2014 UT App 104, ¶ 2 n.1, 326 P.3d 678. Due to the "extensive medical records presented in the record, we discuss only those injuries and medical diagnoses necessary to understand the issues presented." *See id.*

2. At the time of Fogleman's industrial accident, Kolob was insured by Pennsylvania Manufacturers Association Insurance Company.

¶5 At a doctor's appointment roughly six months after the Work Accident, Fogleman complained of "pain and numbness in her right leg extending to the foot," in addition to her ongoing knee and hip pain. A lumbar magnetic resonance imaging (MRI) revealed "multilevel degenerative disc disease" in Fogleman's spine.

¶6 Fogleman received diagnoses for her ailments from a number of other physicians. One doctor concluded that Fogleman was "probably 100%" impaired from the Work Accident. Another found that the "original complaints were reasonably caused by [the Work Accident] but that current presentation no longer correlates with . . . the original condition." That physician also concluded, "The current clinical findings are atypical of the original medical condition and cannot reasonably be causally associated."

¶7 Fogleman applied for workers' compensation benefits, and as part of the proceedings, the parties submitted Fogleman's medical history. Due to the divergent medical conclusions in Fogleman's medical records, the administrative law judge (the ALJ) assigned a medical panel to examine Fogleman and opine on her condition.

¶8 The panel examined Fogleman and reviewed her medical records. The panel issued a report, finding,

> [Fogleman's] hands have significantly improved and are no longer painful. She has occasional numbness when using the hands in certain ways. The contusions suffered to the hands at the time of injury have healed. The [pain in her] knees continue[s] to be a problem . . . . There is pain in the anterior aspect of the knee, patellar crepitus, and a mild limp. Although MRI examinations have failed to show injury to the joint surfaces of the knees, medications and physical

> therapy have been administered without a pain relieving effect, the right knee continues to be painful. It has been given the diagnosis of traumatic chondrosis and chondromalacia. . . . This has not been demonstrated on the MRI examinations.
>
> Since the injury, she has also developed right hip pain . . . . This hip pain was not noted on the initial examination, but, [in later examinations] it had become notable. . . . It continues to be a painful problem.

In response to a specific question posed by the ALJ, the medical panel concluded that there was "a causal connection between the injuries to the knees, hands, and right hip and [the Work Accident]," but that there was "no connection between the back pain and sciatica and [the Work Accident]."

¶9    The medical panel also responded to other specific questions. The medical panel opined that: (1) Fogleman had suffered a two percent whole-person impairment as a result of the Work Accident; (2) "[t]he majority of patients, after such an injury, would have returned to full function some weeks after [the Work Accident]"; and (3) Fogleman's "depression and anxiety compound her current concerns." The panel also stated that "[n]o objective test[s] have shown clear injury . . . . [But] Fogleman has not been able to return to work function." The panel recommended maximum restrictions on any work Fogleman might perform of "no deep knee bends, no lifting greater than 30 pounds except on an occasional basis, and no excessive stair climbing (more than 3 times per four hour shift)."

¶10    The ALJ deemed "the opinion of the medical panel to be the persuasive evidence to resolve the conflicts in medical conclusions between various physicians in the case." Based on the medical panel report, the ALJ found that as a result of the

Work Accident, Fogleman suffered an injury to her hands, right hip, and knees; that the injury to her hands had completely healed; and that her hip and knees had "reached a point of medical stability." The ALJ concluded that Fogleman suffered a two percent whole-person impairment as a result of the Work Accident. The ALJ also adopted the medical panel's finding with regard to Fogleman's maximum work restrictions.

¶11    The ALJ granted Fogleman temporary total disability compensation from the date of the Work Accident to the date of the Work Accident impairments' medical stabilization. The ALJ also awarded permanent partial disability compensation for Fogleman's Work Accident impairments and awarded compensation for medical treatment related to Fogleman's hand and hip injuries.

¶12    However, the ALJ denied Fogleman's permanent total disability claim. The ALJ concluded that Fogleman had not established any of the three elements a claimant is required to prove to qualify for permanent total disability compensation. *See* Utah Code Ann. § 34A-2-413(1)(b) (LexisNexis Supp. 2015).[3] The ALJ ruled that Fogleman had not established that she had sustained a significant impairment or combination of impairments as a result of the Work Accident, the first element of a permanent total disability compensation claim. *See id.* § 34A-2-413(1)(b)(i). The ALJ found that the injury to Fogleman's

---

3. "[I]n workers' compensation claims, the law existing at the time of the injury applies in relation to that injury." *Ameritemps, Inc. v. Labor Comm'n*, 2005 UT App 491, ¶ 1 n.1, 128 P.3d 31 (citation and internal quotation marks omitted). Although Utah Code section 34A-2-413 has been amended since Fogleman's injury, the amendments do not affect the particular subsections at issue in this case. *Compare* Utah Code Ann. § 34A-2-413(1)(b)–(c) (LexisNexis Supp. 2010), *with id.* (2015). For convenience, we cite the most recent version of the statute.

hands, knees, and hip had stabilized and only created "minimal [physical] restrictions" for Fogleman. The ALJ did not include Fogleman's back injury in the significant impairment analysis because it was not "medically caused by [the Work Accident]."

¶13    The ALJ also held that Fogleman had not established a permanent total disability or that the Work Accident was the "direct cause" of a permanent total disability, the second and third elements of a permanent total disability compensation claim. *See id.* § 34A-2-413(1)(b)(ii)–(iii). Rather, the ALJ concluded that Fogleman's back injury, which the ALJ found to be unrelated to the Work Accident, was the cause of the "mobility and pain problems that are responsible for the disability that keeps [Fogleman] from finding employment."

¶14    Fogleman sought the Board's review of the ALJ's order. The Board affirmed the ALJ's ruling. It concluded, among other things, that Fogleman did not sustain a significant impairment or combination of impairments from the Work Accident. The Board focused on the Work Accident impairments and their effect on Fogleman's ability to perform her prior work activities.

¶15    The Board, like the ALJ, did not consider conditions that were not found to be a result of the Work Accident. It then concluded that the Work Accident impairments "do not significantly impair [Fogleman's] ability to do the type of office work she has mainly performed since 1991." And, because the Work Accident caused Fogleman only "minor injuries" that did not affect her ability to engage in her prior work activities, it held that Fogleman's two percent whole-person impairment did not constitute a significant impairment under Utah Code section 34A-2-413(1)(b)(i). Accordingly, the Board affirmed the ALJ's denial of Fogleman's claim for permanent total disability compensation. Fogleman now seeks review of the Board's decision.

ANALYSIS[4]

I. The Board's Denial of Fogleman's Claim for Permanent Total
Disability Compensation

A.     Utah's Permanent Total Disability Compensation Statute

¶16    Before turning to Fogleman's arguments, we review the statutory framework governing claims for permanent total disability compensation. To qualify for permanent total disability benefits, an employee must prove three statutory elements by a preponderance of the evidence. Utah Code Ann. § 34A-2-413(1)(b) (LexisNexis Supp. 2015). The employee must establish that:

> (i)    the employee sustained a significant impairment or combination of impairments as a result of the industrial accident . . . that gives rise to the permanent total disability entitlement;
>
> (ii)   the employee has a permanent, total disability; and
>
> (iii)  the industrial accident . . . is the direct cause of the employee's permanent total disability.

*Id.* To establish the second element—a permanent, total disability—the employee must also demonstrate, by a preponderance of the evidence, that:

> (i)    the employee is not gainfully employed;

---

4. Fogleman raises a number of issues on appeal. We identify the appropriate standard of review for each issue in the section of our analysis addressing that issue.

(ii)     the employee has an impairment or combination of impairments that limit the employee's ability to do basic work activities;

(iii)    the industrial or occupationally caused impairment or combination of impairments prevent the employee from performing the essential functions of the work activities for which the employee has been qualified until the time of the industrial accident . . . that is the basis for the employee's permanent total disability claim; and

(iv)     the employee cannot perform other work reasonably available, taking into consideration the employee's [age, education, past work experience, medical capacity, and residual functional capacity.]

*Id.* § 34A-2-413(1)(c).

¶17     An employee's failure to establish any one of the elements defeats her claim for permanent total disability compensation. *See id.* § 34A-2-413(1)(b)–(c); *see also Prows v. Labor Comm'n*, 2014 UT App 196, ¶¶ 12, 19, 333 P.3d 1261 (upholding the Utah Labor Commission's denial of permanent total disability compensation because the employee did not establish one element).

B.      Fogleman's Challenges to the Board's Denial of Her Permanent Total Disability Compensation Claim

1. The Board's Interpretation of Utah Code Section 34A-2-413(1)(b)(i)

¶18     Fogleman challenges the Board's conclusion that she did not sustain a significant impairment. *See* Utah Code Ann. § 34A-2-413(1)(b)(i) (LexisNexis Supp. 2015). Fogleman argues that the Board erred by not considering her "as an individual, taking all of her issues, including those sustained from [the Work Accident], into consideration." In essence, Fogleman contends

the Board erred in interpreting the statute as requiring it to disregard impairments not causally related to the Work Accident in determining whether she had suffered a significant impairment. Whether the Board correctly interpreted Utah Code section 34A-2-413(1)(b)(i) is a matter of law that we review for correctness, "granting little or no deference to [the Board's] determination." *Utah Chapter of the Sierra Club v. Board of Oil, Gas, & Mining*, 2012 UT 73, ¶ 9, 289 P.3d 558 (citation and internal quotation marks omitted).

¶19 Fogleman asserts that the Board should have considered her back injury as well as her anxiety and depression to determine whether she had sustained a significant impairment. The Board recognized that Fogleman suffered from those conditions, but did not include them in its analysis because it concluded they were not causally related to the Work Accident.

¶20 For the purpose of determining whether Fogleman had suffered a significant impairment, the Board did not err by reading the statute as requiring it to disregard impairments it found to not be causally related to the Work Accident. Subsection 413(1)(b)(i) requires the employee to establish that she "*sustained* a significant impairment or combination of impairments *as a result of* the industrial accident . . . that gives rise to the permanent total disability entitlement." Utah Code Ann. § 34A-2-413(1)(b)(i) (emphases added). By its plain language, then, the statute requires Fogleman to show that her impairment or combination of impairments was sustained "as a result of" the Work Accident and that it "gives rise to the permanent total disability." *See id.*; *see also Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 ("[W]hen faced with a question of statutory interpretation, our primary goal is to evince the true intent and purpose of the Legislature. The best evidence [of that] is the plain language of the statute itself." (citations and internal quotation marks omitted)).

¶21 Fogleman's argument does not address the plain language of the statute. Nor does she address cases in which this court has appeared to endorse the Board's reading of the statute. *See, e.g.*, *Clawson v. Labor Comm'n*, 2013 UT App 123, ¶ 10 & n.4, 302 P.3d 1247 (concluding that the Board did not err by disregarding an employee's preexisting medical conditions that were unrelated to the work accident in its permanent total disability analysis but setting aside the Board's decision on other grounds).[5] In the absence of an argument squarely addressing the statute's plain language and the cases that cut against her position, Fogleman cannot sustain her burden on appeal of demonstrating that the Board misinterpreted the statute.[6]

---

5. Fogleman does posit that many cases support her argument. *See Hardman v. Salt Lake City Fleet Mgmt.*, 725 P.2d 1323 (Utah 1986); *Kaiser Steel Corp. v. Industrial Comm'n*, 709 P.2d 1168 (Utah 1985); *Marshall v. Industrial Comm'n*, 681 P.2d 208 (Utah 1984); *USX Corp. v. Industrial Comm'n*, 781 P.2d 883 (Utah Ct. App. 1989). However, these cases are of little assistance to our analysis here, as each interpreted a prior version of a workers' compensation statute that did not require the claimant to prove a significant impairment or combination of impairments as a result of the industrial accident.

6. Fogleman's argument may be read to assert that the Board should have considered her other ailments because they pre-existed the Work Accident and contributed to her overall condition following the Work Accident. But, Fogleman does not support this contention with analysis of the current version of the statute or cases interpreting that statute. Fogleman cannot sustain her burden on appeal without developing an argument based upon the current statute. *See, e.g.*, *State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448 (noting that the appellant bears the burden of persuasion on appeal and that an appellate court will not "do the heavy lifting" for the appellant); *Hi-Country Estates*

(continued…)

¶22    Therefore the Board did not err by considering only those impairments that were the result of the Work Accident in its significant impairment determination under Utah Code section 34A-2-413(1)(b)(i).

2. The Board's Significant-Impairment Determination

¶23    Fogleman also argues that the Board erred in concluding that her two percent whole-person impairment did not constitute a significant impairment.

a. Standard of Review

¶24    Determining "whether a particular impairment is 'significant' . . . requires a court to evaluate the severity of the impairment and determine whether the level of impairment exceeds a minimum threshold." *Provo City v. Labor Comm'n*, 2015 UT 32, ¶ 16, 345 P.3d 1242. This question is a mixed question of law and fact that we review "either deferential[ly] or de novo, depending on the nature of the particular mixed question." *Id.* ¶ 17. The particular standard of review depends on three factors:

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on facts observed by the trial judge, such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting [deference] to trial courts.

---

(…continued)
*Homeowners Ass'n v. Jesse Rodney Dansie Living Tr.*, 2015 UT App 218, ¶ 5, 359 P.3d 655.

*Murray v. Labor Comm'n*, 2013 UT 38, ¶ 36, 308 P.3d 461 (alteration in original) (citation and internal quotation marks omitted). In *Murray*, the Utah Supreme Court analyzed the issues presented by a mixed question of law and fact and, to determine the particular standard of review, asked whether their resolution was "fact-like"—i.e., the administrative tribunal is in a superior position to decide the question—or "law-like"—i.e., the question lends "itself to consistent resolution by a uniform body of appellate precedent." *Id.* ¶ 37 (citation and internal quotation marks omitted).

¶25 In *Provo City*, the supreme court addressed an argument similar to the one at issue here and determined that it was a fact-like question, reviewed deferentially under a substantial evidence standard. *See* 2015 UT 32, ¶¶ 18, 23–24. There, the court reviewed the Board's significant-impairment determination, which was based on a six percent whole-person impairment, for substantial evidence. *Id.* ¶¶ 23–24. Because the question presented here does not differ materially from that in *Provo City*, we review Fogleman's challenge to the Board's decision under a substantial-evidence standard. *See id.* "A finding is supported by substantial evidence when a reasonable mind might accept as adequate the evidence supporting the decision." *Bailey v. Retirement Bd.*, 2012 UT App 365, ¶ 2, 294 P.3d 577 (citation and internal quotation marks omitted).

b. The Board's Application of the Law to the Facts

¶26 Fogleman argues that the Board erred in finding that her impairments did not constitute a significant impairment and by failing to "include all of [her] work limitations as found by the medical panel" in its significant-impairment determination.

¶27 Fogleman relies on two Utah Supreme Court cases to argue that "a low percentage of physical impairment is not per se less than [a] permanent total disability" and to argue that the disability must be evaluated "in terms of the specific individual

who has suffered a work-related injury." *See Hardman v. Salt Lake City Fleet Mgmt.*, 725 P.2d 1323 (Utah 1986); *Kaiser Steel Corp. v. Industrial Comm'n*, 709 P.2d 1168 (Utah 1985).[7] We readily agree. We can envision situations in which a low-percentage impairment or impairments could meet Utah Code section 34A-2-413(1)(b)(i)'s significant-impairment standard. But these considerations do not lead us to conclude, as Fogleman argues, that the Board's determination here is not supported by substantial evidence.

¶28    Noting the disagreement between treating physicians, the ALJ convened a medical panel. That panel reviewed the medical records and examined Fogleman. The Board found the medical panel report persuasive and expressly adopted it. In doing so, the Board found, among other things, that Fogleman suffered injuries to her hands, knees, and right hip, amounting to a two percent whole-person impairment, and that her physical restrictions did not prevent her from performing office work similar to her duties at Kolob.

¶29    The medical panel also determined that Fogleman's knee, hand, and right hip injuries were medically causally related to the Work Accident. It found that there were "no X-ray or surgical abnormalities documented that related to [Fogleman's] impairments." The panel also noted that Fogleman complained of continued pain in her hip and right knee, but found that "[n]o objective test[s] have shown clear injury," and that a "normal range of motion returned in less than a month after the injury." In light of that evidence, we cannot conclude the Board's

---

7. It bears noting that *Hardman v. Salt Lake City Fleet Management*, 725 P.2d 1323 (Utah 1986), and *Kaiser Steel Corp. v. Industrial Commission*, 709 P.2d 1168 (Utah 1985), were decided under a prior statute that did not require a "significant impairment" determination. *See Hardman*, 725 P.2d at 1325; *Kaiser*, 709 P.2d at 1170.

determination—that Fogleman's two percent whole-person impairment does not constitute a significant impairment—lacks a substantial evidentiary basis.[8]

¶30    While Fogleman continues to have pain in her right knee and hip, substantial evidence supports the Board's finding that those impairments' maximum effect on her work abilities does not prevent her from carrying out her prior day-to-day work activities. Accordingly, we decline to disturb the Board's determination that Fogleman's impairments do not "exceed[] [the] minimum threshold," *see Provo City v. Labor Comm'n*, 2015 UT 32, ¶ 16, 345 P.3d 1242, and thus do not constitute a significant impairment under Utah Code section 34A-2-413(1)(b)(i).[9]

---

8. Fogleman also contends that the Board erred by failing to include all of her work limitations "as found by the medical panel (i.e. low back, gait abnormality, continuing pain, avoidance of activities and establishing a tolerable lifestyle, pain perception, depression, and anxiety)." We disagree. The Board adopted the medical panel's findings regarding the "maximum restrictions" caused by her impairments and the panel's two percent whole-person impairment finding, among other things. While the Board may not have specifically highlighted each aspect of Fogleman's impairments or provided an exhaustive list of each of their manifestations, it adopted the findings of the medical panel and made findings of fact. Only after the Board made these findings, which are supported by substantial record evidence, did it conclude that Fogleman's impairments did not constitute a significant impairment.

9. Fogleman also argues that the odd-lot doctrine requires an evaluation of the Work Accident and non-Work Accident impairments. "The odd lot doctrine allows [the Board] to find permanent total disability when a relatively small percentage of

(continued…)

3. Fogleman's Remaining Challenges Regarding the Board's Denial of Her Claim for Permanent Total Disability Compensation

¶31    Fogleman raises a number of other challenges to the Board's denial of her permanent total disability compensation claim. Because Fogleman has not carried her burden of demonstrating that the Board erred in concluding that the Work Accident impairments do not constitute a significant impairment—a required element of her claim—we need not address Fogleman's remaining arguments. *See supra* ¶¶ 16–17.

¶32    Accordingly, we conclude that the Board did not err by restricting its significant impairment analysis, under Utah Code section 34A-2-413(1)(b)(i), to Fogleman's impairments resulting from the Work Accident. And the Board's determination that Fogleman's impairments do not amount to a significant

---

(…continued)
impairment caused by an industrial accident is combined with other factors to render the claimant unable to obtain employment." *Zupon v. Industrial Comm'n*, 860 P.2d 960, 963 (Utah Ct. App. 1993). The odd-lot doctrine requires the court to determine "the extent to which [the employee's impairment or impairments] affects the employee's ability to return to full employment." *Olsen v. Labor Comm'n*, 2011 UT App 70, ¶ 18, 249 P.3d 586. But, as we determined above, Fogleman has not carried her burden to establish that she suffered from a significant impairment under Utah Code section 34A-2-413(1)(b)(i). Thus, the odd-lot doctrine does not come into play here. *See generally Mercado v. Labor Comm'n*, 2014 UT App 268, ¶¶ 12–13, 339 P.3d 158 (holding that the Board had a "sufficient basis" for denying the employee's benefits under the odd-lot doctrine); *Olsen*, 2011 UT App 70, ¶¶ 11, 18–25 (reviewing the odd-lot doctrine's applicability to an employee's claim for permanent total disability benefits).

impairment is supported by substantial evidence. We decline to disturb the Board's denial of Fogleman's claim for permanent total disability compensation.

## II. The Board's Alleged Failure to Give Fogleman the "Benefit of the Doubt"

¶33    Fogleman also argues that we should overturn the Board's decision because the "Board failed to properly consider [the] long-standing rule of statutory construction applicable to all industrial claims"—that "her claim be liberally construed in favor of awarding benefits, and that any doubts raised from the evidence be resolved in favor of her claim." We are required to "look closely to assure ourselves that [the Board] has liberally construed and applied the [Workers' Compensation Act] to provide coverage and has resolved any doubt respecting the right to compensation in favor of an injured employee." *Salt Lake City Corp. v. Labor Comm'n*, 2007 UT 4, ¶ 16, 153 P.3d 179.

¶34    Fogleman raised this argument before the Board. The Board rejected it, reasoning that giving Fogleman the benefit of the doubt and applying statutes liberally "does not mean ignoring the persuasive medical evidence that [the Work Accident] did not result in a significant impairment or render [Fogleman] permanently and totally disabled."

¶35    We agree with the Board. It is true that the Workers' Compensation Act is "to be construed liberally, resolving any doubt as to an employee's right to compensation in favor of the employee." *Murray v. Labor Comm'n*, 2012 UT App 33, ¶ 6, 271 P.3d 192, *aff'd on other grounds*, 2013 UT 38, 308 P.3d 461. But, it is nevertheless the burden of the employee to establish all of the elements of a claim for permanent total disability compensation. *See* Utah Code Ann. § 34A-2-413(1)(b)–(c) (LexisNexis Supp. 2015). For us to hold otherwise would ignore the plain language of Utah Code section 34A-2-413(1), which requires the employee

to establish each element by a preponderance of the evidence. *See id.*

¶36    The Utah Supreme Court has stated,

> The benefit of the doubt owing to workers' compensation claimants comes at the back end of the litigation—after the judge (or commission) makes a run at resolving disputed questions of fact, at clarifying gray areas of law, and at applying the law to the facts of the case at hand. In the rare case where that process yields genuine doubt—in a dead heat without an apparent winner—*that* doubt should be resolved in favor of coverage. But otherwise the judge (or commission) is oath-bound to rule in favor of the party whose case is strongest under the law as applied to the facts. Such a judgment cannot be abandoned on the mere presence of doubt about the matter.

*Jex v. Labor Comm'n*, 2013 UT 40, ¶ 56, 306 P.3d 799. In other words, before the tie can go to the runner, there has to be a tie.[10]

---

10. We use this phrase cautiously. Apparently there is no rule in the Major League Baseball Rulebook that expressly provides that a tie actually goes to the runner. *See* Mark Dewdney, *"Come On, Blue, Tie Goes to the Runner!" No, It Does Not*, Bleacher Report (July 27, 2009), http://bleacherreport.com/articles/225160-come-on-blue-tie-goes-to-the-runner-no-it-does-not ("'A runner acquires the right to an unoccupied base when he touches it before he is out.' The key word here is 'before'. The *instant* that ball touches the fielder's mitt, if the runner was not there *before* the ball, he *must* be called out—no leeway."); David Wade, *Inside the Rules: Tie Goes to the Runner*, The Hardball Times (Nov. 4, 2010), http://www.hardballtimes.com/tht-live/inside-the-rules-tie-goes-to-the-runner/.

¶37   The Board did not err by concluding that Fogleman had not established an entitlement to permanent total disability compensation under Utah Code section 34A-2-413(1)(b)–(c). And because Fogleman did not establish the necessary elements of a permanent total disability claim, she is not entitled to a "benefit of the doubt."

### III. Fogleman's Anxiety and Depression

¶38   Fogleman next argues that the Board "erred by failing to specifically include an award of treatment for [her] industrially-compounded depression and anxiety." Essentially, she contends that this treatment should have been awarded because the medical panel found medical causation between the Work Accident and her anxiety and depression. Whether medical causation has been established is an issue of fact, which we review for substantial evidence. *Cook v. Labor Comm'n*, 2013 UT App 286, ¶ 10, 317 P.3d 464; *see also Provo City v. Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242 ("[A] challenge to an administrative agency's finding of fact is reviewed for substantial evidence."). "To establish medical causation, a 'claimant must show by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability.'" *Cook*, 2013 UT App 286, ¶ 12 (quoting *Allen v. Industrial Comm'n*, 729 P.2d 15, 27 (Utah 1986)). And an employee "can generally recover benefits when an industrial injury aggravates or 'light[s] up' a pre-existing condition and has a causal connection with the subsequent onset of symptoms." *Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 23, 307 P.3d 615 (alteration in original) (quoting *Virgin v. Board of Review*, 803 P.2d 1284, 1288 (Utah Ct. App. 1990)).

¶39   Fogleman first contends that the Board's order can be construed to grant her an award of future medical care for her anxiety and depression. She also argues that, at a minimum, the order's wording "is ambiguous" and therefore we should remand for further consideration.

¶40    The Board ordered that Fogleman is "entitled to the future medical care outlined by the medical panel for her work injuries." The Board expressly found, however, that "[w]hile there is some evidence that [Fogleman] has other limitations stemming from . . . her emotional state, the medical panel's report shows that such conditions are not medically causally related to [the Work Accident]." Consequently, Fogleman's anxiety and depression were not included in the Board's grant of future medical care for her "work injuries." Because the Board specifically considered and denied Fogleman's request for an award of treatment for her anxiety and depression, we disagree with Fogleman's characterization of the Board's order.

¶41    Fogleman also appears to argue that the Board erred in concluding that the Work Accident did not cause or aggravate her anxiety and depression. Fogleman seeks support for her argument in the medical panel's statement that her anxiety and depression "compound her current concerns." There are two problems with Fogleman's argument.

¶42    First, the Board expressly found that while "[Fogleman's] depression and anxiety hinder her ability to work," "the medical panel's report shows that such conditions are not medically causally related to [the Work Accident]." To successfully challenge the Board's factual findings, Fogleman must "demonstrate how [the record] evidence is inadequate to support the finding[s]." *Swift Transp. v. Labor Comm'n*, 2014 UT App 104, ¶ 8, 326 P.3d 678. Fogleman has failed to make this showing; she simply highlights a single statement in the medical panel report that arguably contradicts the Board's factual findings. Fogleman does not include any reference to the medical panel's determination that "medical problems caused by the industrial accident [had] stabilized" or its statement that she "had received the appropriate treatment for [her] problems." Nor does she reference the panel's statement, "It was not expected that her problems would significantly change with further intervention." Because Fogleman has not rebutted the

evidence supporting the Board's ruling, she has failed to demonstrate how that evidence is inadequate to support the Board's ruling.

¶43 Second, even if Fogleman could shoulder her burden on appeal with a single comment from the medical panel report, the statement upon which she relies does not support her argument. As discussed above, an employee may recover costs for treatment of a pre-existing condition if the employee presents evidence that an industrial accident has aggravated or lit up a pre-existing condition and that there is a causal connection between the subsequent symptoms and the Work Accident. *See Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 23, 307 P.3d 615. But Fogleman has failed to make this showing. The only evidence Fogleman raises to support her claim—the medical panel's statement regarding her anxiety and depression—seems to reverse that causation. The panel stated that the anxiety and depression "compound" her other concerns, not that the Work Accident caused a flare up in her anxiety and depression.

¶44 Accordingly, we reject Fogleman's contention that the Board's grant of costs for future medical care can be construed to include an award of costs related to the treatment of her anxiety and depression. Because the Board's order is not ambiguous regarding an award of future care for Fogleman's anxiety and depression, we reject her request to remand for further clarification. We also reject Fogleman's argument that the Board erred by failing to award those costs.

CONCLUSION

¶45 We conclude that the Board did not err in denying Fogleman's petition for permanent total disability compensation under Utah Code section 34A-2-413(1)(b). The Board did not err in restricting its significant-impairment analysis, under subsection 413(1)(b)(i), to those of Fogleman's impairments that

were found to be causally related to the Work Accident. The Board's conclusion that Fogleman's impairments did not constitute a significant impairment is supported by substantial evidence. We reject Fogleman's argument that the Board erred by failing to "liberally construe[] [her claim] in favor of awarding benefits." The plain language of the statute requires Fogleman to prove the elements of her claim by a preponderance of the evidence and she has failed to do so. Finally, we conclude that the Board specifically considered and rejected Fogleman's claim that she be granted an award of treatment for her anxiety and depression, and we conclude that its decision is supported by substantial evidence.

¶46     We decline to disturb the Board's decision.

———————————