**2014 UT App 277**

# THE UTAH COURT OF APPEALS

DANNY'S DRYWALL AND AMERICAN LIBERTY
INSURANCE CO.,
Petitioners,

*v.*

LABOR COMMISSION AND RAFAEL SUASTEGUI BERNAL,
Respondents.

Opinion
No. 20121077-CA
Filed November 20, 2014

Original Proceeding in this Court

Mark D. Dean, Kristy L. Bertelsen, and Scott R.
Taylor, Attorneys for Petitioners

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Aaron J. Prisbrey and Trevor C. Sanders, Attorneys
for Respondent Rafael Suastegui Bernal

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGES MICHELE M. CHRISTIANSEN and JOHN A. PEARCE
concurred.[1]

BENCH, Senior Judge:

¶1    Danny's Drywall and its insurer, American Liberty
Insurance Co., (collectively, Employer) petition for judicial review
of a Labor Commission decision awarding permanent total

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud. Admin.
11-201(6).

disability benefits to Rafael Suastegui Bernal (Claimant). We do not disturb the Commission's decision.

BACKGROUND

¶2      On February 17, 2009, while working as a drywall installer for Danny's Drywall, Claimant "fell 14 feet from a ladder and scaffold." He suffered extensive bone fractures in his face and right hand, as well as tears in the muscles and cartilage of his right shoulder. He also experienced back and neck pain. Following treatment, Claimant reached medical stability from his hand and shoulder injuries, but headaches and continued chronic pain in his right jaw, neck, and lower back affected his activity level and ability to sleep. He was eventually diagnosed with several torn and bulging discs in his back.

¶3      In April 2010, Claimant filed an application for permanent total disability benefits. After a hearing, the Administrative Law Judge (the ALJ) decided that, due to the conflicting medical evidence concerning Claimant's medical and functional limitations, a final determination on his eligibility for permanent total disability benefits could not be made without an independent medical review. As a result, in June 2011, the ALJ appointed a medical panel, consisting of specialists in pain management and psychiatry. In the medical panel referral letter, the ALJ informed the panel that it was "bound by the Findings of Fact and Conclusions of Law contained in my Interim Order." As the ALJ explained, "[t]he facts are the historical and other legal data regarding how the injury occurred, dates and times, places, persons involved, and other related information commonly thought of as the situational circumstances surrounding the alleged injury." The ALJ also stated,

> If you discover additional facts which are not contrary to the facts in the Findings of Fact and Conclusions of Law contained in my Interim Order, and you use them in your examination and evaluation, it will be necessary to include them in

> your report and explain how the additional facts affected your analysis and conclusions.

The ALJ then instructed the medical panel to answer the following question: "What are [Claimant's] permanent physical restrictions as a result of injury from the industrial accident on 2/17/2009?" The ALJ further instructed the panel to "address in your answer the varying opinions in the medical record and relate [Claimant's] functional and medical capacity restrictions regarding his ability to work an eight hour work day including limits on standing, sitting, missing work days and breaks needed within the work day."

¶4    The medical panel reviewed all relevant medical records, considered the opinions of the parties' experts, and conducted its own examination of Claimant. The medical panel thereafter issued a report detailing its conclusions regarding Claimant's functional and medical capacity restrictions related to the industrial accident. The medical panel diagnosed Claimant with a number of "medical conditions, as a direct result of the February 17, 2009 industrial accident," including traumatic brain injury and chronic pain. The panel determined that Claimant had a variety of restrictions related to lifting, sitting, and other activities. According to the panel, it was unlikely that Claimant could be a productive worker for more than four hours a day. Even then, the panel expected Claimant to require additional time off due to medical care and periodic exacerbations of his problems.

¶5    In response to the medical panel report, Employer hired a physiatrist, Dr. Jeff Chung, to review and critique the report. In preparing his analysis, Dr. Chung relied entirely on the panel report and examined neither Claimant nor the underlying medical records. Although Dr. Chung agreed with some of the medical panel's conclusions, Dr. Chung flatly disagreed with the panel's diagnoses and also opined that the panel's report did not adequately state a basis for some of its conclusions.

¶6    Employer filed an objection to the medical panel report, citing Dr. Chung's critique and arguing (1) that the panel violated the charging order by evaluating matters not before it, (2) that the

report was not based on reasonable medical probability, and (3) that other substantial evidence supported a finding contrary to the panel's finding. The ALJ rejected all of Employer's arguments and admitted the medical panel report into the evidentiary record. After considering all the evidence, the ALJ adopted the medical panel's opinion regarding Claimant's functional and medical capacity restrictions that were caused by the industrial accident and ultimately determined that Claimant was eligible for permanent total disability benefits.

¶7      Employer subsequently filed a motion for review with the Commission, raising the same arguments as in its objection to the medical panel report. Like the ALJ, the Commission rejected Employer's arguments. First, the Commission concluded that "the medical panel did not exceed its authority, either in its personal examination of [Claimant], its diagnosis of his medical problems, or its assessment of whether those problems were caused by his work accident." Second, the Commission determined that, when viewed as a whole, the medical panel report is based on the panel's assessment of medical probability. Third, the Commission reasoned that the existence of contradictory evidence was not a sufficient reason to disregard or exclude the medical panel report. The Commission therefore rejected Employer's challenges to the ALJ's decision and the medical panel report on which it was based, and affirmed the ALJ's decision. This petition for judicial review followed.

ISSUES AND STANDARDS OF REVIEW

¶8      Employer first attacks the Commission's adoption of the medical panel report, contending that the panel disregarded the charging order by evaluating medical causation, diagnosis, and past and future medical care. In particular, Employer argues that the ALJ did not refer all of those issues to the panel when the ALJ asked the panel to evaluate Claimant's "permanent physical restrictions as a result of injury from the industrial accident." Because Employer's argument challenges the propriety of the Commission's interpretation of the ALJ's order, we review that

interpretation for an abuse of discretion. *See A & B Mech. Contractors v. Labor Comm'n*, 2013 UT App 230, ¶ 7, 311 P.3d 528.

¶9     Employer raises two other arguments in challenging the Commission's award of permanent total disability benefits to Claimant, focusing on the Commission's adoption of the medical panel report. "Whether the commission correctly or incorrectly denied benefits is a traditional mixed question of law and fact." *Jex v. Labor Comm'n*, 2013 UT 40, ¶ 15, 306 P.3d 799 (citation and internal quotation marks omitted); *see also Murray v. Labor Comm'n*, 2013 UT 38, ¶ 33, 308 P.3d 461 ("[A] mixed question arises when an agency . . . must apply a legal standard to a set of facts unique to a particular case." (citation and internal quotation marks omitted)). "The standard of review we apply when reviewing a mixed question can be either deferential or nondeferential . . . ." *Murray*, 2013 UT 38, ¶ 36. "Deference on a mixed question is warranted when 'the mixed finding is not "law-like" because it does not lend itself to consistent resolution by a uniform body of appellate precedent' or 'is "fact-like" because the [factfinder] is in a superior position to decide it.'" *Jex*, 2013 UT 40, ¶ 15 (alteration in original) (emphasis omitted) (quoting *Murray*, 2013 UT 38, ¶ 37).

¶10     Next, Employer argues that the ALJ's Interim Order was not sufficiently detailed and that the ALJ's failure to provide adequate findings of fact led the medical panel to evaluate matters beyond the scope of its authority. "Whether an administrative agency's findings are adequate is a legal determination that requires no deference." *Blair v. Labor Comm'n*, 2011 UT App 248, ¶ 14, 262 P.3d 456.

¶11     Finally, Employer argues that the Commission erred in adopting the medical panel report because, according to Employer, other substantial evidence supports findings contrary to the medical panel's findings. "We will not disturb the Commission's factual findings unless the party challenging the findings demonstrates that a finding is not supported by substantial evidence." *Swift Transp. v. Labor Comm'n*, 2014 UT App 104, ¶ 8, 326 P.3d 678 (citing *Murray*, 2013 UT 38, ¶ 19); *see also* Utah Code Ann.

§ 63G-4-403(4)(g) (LexisNexis 2011) (authorizing an appellate court to grant relief if an "agency action is based upon a determination of fact . . . that is not supported by substantial evidence"). "In other words, the [Commission's] factual findings are accorded substantial deference and will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible." *Cook v. Labor Comm'n*, 2013 UT App 286, ¶ 10, 317 P.3d 464 (citation and internal quotation marks omitted). "In conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Becker v. Sunset City*, 2013 UT 51, ¶ 21, 309 P.3d 223 (citation and internal quotation marks omitted). "Instead, we defer to [a lower tribunal's] findings because when reasonably conflicting views arise, it is the [fact-finder's] province to draw the inferences and resolve these conflicts." *Id.* (alterations in original) (citation and internal quotation marks omitted).


ANALYSIS

I. Scope of the Medical Panel Report

¶12     Employer argues that the Commission abused its discretion in adopting the medical panel report because the panel disregarded the charging order by evaluating medical causation, diagnosis, and past and future medical care. Employer contends that the ALJ's request that the panel evaluate Claimant's "permanent physical restrictions as a result of injury from the industrial accident" did not authorize the panel to consider the issues of causation and diagnosis.

¶13     Section 34A-2-601 of the Utah Code permits an administrative law judge to refer the medical aspects of a case to a medical panel. Utah Code Ann. § 34A-2-601(1)(a) (LexisNexis Supp. 2013). Pursuant to this section, an administrative law judge will appoint a medical panel "where one or more significant medical issues may be involved." Utah Admin. Code R602-2-2(A). Significant medical issues are involved when there are, inter alia,

"[c]onflicting medical opinions related to a claim of permanent total disability." *Id*. R602-2-2(A)(4).

¶14    When a medical panel is convened, "[t]he role of the Medical Panel is to 'evaluat[e] medical evidence' and 'advis[e] an administrative law judge with respect to the administrative law judge's ultimate fact-finding responsibility.'" *Blair*, 2011 UT App 248, ¶ 18 (alterations in original) (quoting Utah Code Ann. § 34A-2-601(1)(d)(ii) (Supp. 2010)). "[T]he ALJ/Commission is always the ultimate fact finder," *Speirs v. Southern Utah Univ.*, 2002 UT App 389, ¶ 10, 60 P.3d 42, and "[a]lthough an administrative law judge is not bound by the panel's report, she may base her findings and decision on it," *Blair*, 2011 UT App 248, ¶ 18 (citing Utah Code Ann. § 34A-2-601(2)(e)(i) (Supp. 2010)). Consequently, "[i]t is not unusual for an administrative law judge and the Commission to adopt the findings of a medical panel." *Id.* ¶ 19 (citation and internal quotation marks omitted). "However, it is the prerogative and the duty of the Commission to consider not only the report of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions fairly and reasonably could be derived therefrom." *Id*. (citation and internal quotation marks omitted). Indeed, the medical panel's "proper purpose is limited to medical examination and diagnosis, the evidence of which is to be considered by the Commission in arriving at its decision." *Intermountain Health Care, Inc. v. Board of Review of the Indus. Comm'n*, 839 P.2d 841, 845 n.5 (Utah Ct. App. 1992) (citation and internal quotation marks omitted).

¶15    In this case, the ALJ appointed a medical panel after first determining that conflicting medical evidence concerning Claimant's medical and functional limitations required an independent review of the medical evidence. The ALJ specifically directed the medical panel to answer the following question: "What are [Claimant's] permanent physical restrictions as a result of injury from the industrial accident on 2/17/2009?" In Employer's view, the ALJ's instruction did not allow the panel to consider the issues of causation, diagnosis, and past and future medical care. We are not persuaded. Instead, we agree with the Commission that the ALJ's charge to the panel consisted of several components,

including the identity of Claimant's medical problems, the likelihood that those problems were "a result of" the industrial accident, and an assessment of the physical restrictions resulting from those work-related injuries. (Internal quotation marks omitted.) Similarly, we agree with the ALJ that it is difficult to understand how the panel could perform its job without addressing the physical restrictions and whether they were caused by the injuries sustained in the industrial accident. Indeed, Employer has not identified any statute or rule that the panel's analysis violated. Because the medical panel was responsive to the various components of the ALJ's charging order and because the Commission was the ultimate factfinder, we conclude that the Commission did not exceed its discretion in determining that the causation and diagnosis of Claimant's conditions were issues properly before the medical panel.

## II. Reasonable Medical Probability

¶16 Employer challenges the Commission's conclusion that the medical panel report was based on a reasonable medical probability rather than on a medical possibility. In support of its argument that the medical panel report is speculative and uncertain, Employer points to the medical panel report's use of the words "may" and "possible" with regard to Claimant's physical conditions. Because this issue "does not lend itself to consistent resolution by a uniform body of appellate precedent," it is fact-like and the Commission's decision on the issue is entitled to deference. *See Jex v. Labor Comm'n*, 2013 UT 40, ¶ 15, 306 P.3d 799 (citation and internal quotation marks omitted).

¶17 Although Employer is correct that the medical panel report uses the terms "may" and "possible" on occasion, the medical panel begins its report of Claimant's conditions with the unequivocal statement that Claimant "has the following medical conditions, as a direct result of the February 17, 2009 industrial accident." When the report is read as a whole, and in light of this clear statement that Claimant "has the following medical conditions," it is evident that the medical panel's opinion is based on the panel's assessment of medical probability. We therefore

disagree with Employer that the Commission's order should be set aside.

### III. The Medical Panel's Examination

¶18    Employer claims that the Commission erroneously adopted the medical panel report because the panel relied on statements made during its examination of Claimant. When the panel interviewed Claimant, Claimant's family members helped him answer questions and stated their observations of his symptoms. Employer asserts that the medical panel should not have considered these comments because they were outside the record. Because the Commission is "in a superior position to decide" this question, we defer to its determination. *See id.* (citation and internal quotation marks omitted).

¶19    The Utah Code allows a medical panel to "conduct a study," "take an x-ray," or "perform a test." Utah Code Ann. § 34A-2-601(2)(a)(i)–(iii) (LexisNexis Supp. 2013). Accordingly, "a medical panel may conduct its own medical examination and review of the medical record." *Certified Bldg. Maint. v. Labor Comm'n*, 2012 UT App 240, ¶ 12, 285 P.3d 831. This court has therefore allowed Commission decisions to stand where the medical panel conducted its own examination and interview of the claimant. *See, e.g., id.* ¶¶ 12–13 ("[T]he medical panel was provided the medical record and was permitted to conduct its own physical examination and interview of [the claimant].").

¶20    Employer's argument that the medical panel improperly considered extra-record evidence relies on Utah Code section 63G-4-208, which provides that in formal adjudicative proceedings, the presiding officer shall issue an order with "findings of fact based exclusively on the evidence of record in the adjudicative proceedings or on facts officially noted." Utah Code Ann. § 63G-4-208(1)(a) (LexisNexis 2011). If we assume, without deciding, that section 63G-4-208 applies to a medical panel report, the report in this case was based on "the evidence of record in the adjudicative proceedings *or* on facts officially noted." *See id.* (emphasis added). The medical panel report expressly noted information that

originated from statements made by Claimant's family members during the panel's examination. In doing so, the medical panel complied with the ALJ's instruction that it include in its report any "additional facts which are not contrary to the facts in the Findings of Fact and Conclusions of Law contained in [her] Interim Order" that the panel used in its examination and evaluation. Furthermore, medical panels routinely obtain information from interviews with claimants, *see, e.g., Certified Bldg. Maint.*, 2012 UT App 240, ¶¶ 12–13, and Employer has not persuaded us that the medical panel in this case impermissibly gathered a medical history that conflicted with the ALJ's interim findings.

¶21 Employer nonetheless asserts that the medical panel's consideration of the family members' statements violated its statutory right to cross-examine witnesses. In support, Employer cites section 63G-4-206 of the Utah Administrative Procedures Act (the UAPA). This section provides that "in all formal adjudicative proceedings, a hearing shall be conducted" during which all parties are afforded "the opportunity to present evidence, argue, respond, conduct cross-examination, and submit rebuttal evidence." Utah Code Ann. § 63G-4-206(1)(d) (LexisNexis 2011). Under the UAPA, an "'[a]djudicative proceeding' means an agency action or proceeding described in Section 63G-4-102." *Id.* § 63G-4-103(1)(a). Section 63G-4-102, in turn, does not say anything about a medical panel's examination. *Id.* § 63G-4-102 (LexisNexis Supp. 2013). Employer relies on section 63G-4-206 for its claim that it was entitled to cross-examine the family members, but by its plain language, the section applies only to formal adjudicative proceedings. *Id.* § 63G-4-206. Employer does not explain how a medical panel's examination of a claimant, conducted pursuant to section 34A-2-601(2)(a), constitutes a formal adjudicative proceeding during which an employer must be afforded an opportunity to cross-examine all those present. Employer therefore has not convinced us that section 63G-4-206 requires the ALJ and the Commission to afford parties the opportunity to cross-examine individuals present at a medical panel's examination of a claimant.

¶22 Employer also contends that the Commission violated its right to constitutional due process by permitting the medical panel

to solicit information from Claimant's family members without giving Employer an opportunity to cross-examine them. Employer, however, has not demonstrated that it sufficiently preserved the issue during the proceedings before the Commission.

¶23   "[T]he preservation rule applies to every claim, including constitutional questions . . . ." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. "We do not review an unpreserved issue unless exceptional circumstances are present or the error was plain." *Utah Chapter of Sierra Club v. Air Quality Bd.*, 2009 UT 76, ¶ 26, 226 P.3d 719. "[T]o preserve an issue for judicial review it must be raised in a timely fashion before the agency, and be specifically raised with supporting evidence or relevant legal authority." *Wintle-Butts v. Career Serv. Review Office*, 2013 UT App 187, ¶ 13 n.4, 307 P.3d 665 (citation and internal quotation marks omitted). "In short, a party may not claim to have preserved an issue for appeal by merely mentioning . . . an issue without introducing supporting evidence or relevant legal authority." *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (omission in original) (citation and internal quotation marks omitted).

¶24   In its motion for review before the Commission, Employer stated that "[a]ny medical or factual information solicited from any third party family member who attended the evaluation is in violation of [Employer's] right to state and federal due process and violation of the Utah Administrative Procedures Act." Although Employer cited section 63G-4-206 as supporting authority for its statutory right to cross-examine witnesses under the UAPA, Employer failed to argue how its constitutional due process rights were violated. As a result, the Commission did not have the opportunity to address Employer's constitutional argument. Because Employer did not adequately preserve this issue before the Commission, we decline to reach the merits of Employer's constitutional due process argument.

IV. Adequacy of the Interim Order

¶25   Next, Employer argues that the ALJ provided insufficient findings of fact in her Interim Order. Specifically, Employer argues

that the Interim Order "failed to identify for the panel those conditions which were caused by the industrial accident" and that this error prejudiced Employer because it caused the medical panel to "stray[] beyond the Interim Order and erroneously mak[e] its own factual findings regarding [the] issue[]."

¶26  In this case, the Interim Order did not contain findings as to the nature of Claimant's diagnoses, whether his various medical problems were caused by his work accident, or what effect those medical problems had on his ability to work. Employer argues that these omissions render the ALJ's Interim Order insufficiently detailed. Employer, however, failed to preserve this argument before the ALJ or the Commission. As discussed, an argument is preserved for judicial review if it is has been "raised in a timely fashion before the agency, and [has been] specifically raised with supporting evidence or relevant legal authority." *Wintle-Butts*, 2013 UT App 187, ¶ 13 n.4 (citation and internal quotation marks omitted). In its reply memorandum in support of its objection to the medical panel report, Employer stated, "In this case, the interim order and charging instructions were insufficient to provide guidance as to what conditions were causally related to the industrial accident." (Emphasis omitted.) Employer did not support this claim with any relevant legal authority. Employer made the same assertion, again without supporting legal authority, in its reply to Claimant's objection to the motion for review. Employer therefore has not preserved this argument for judicial review.

¶27  But even if we were to consider this argument, we could not agree with Employer that the medical panel strayed beyond the Interim Order, because the ALJ specifically asked the medical panel to evaluate Claimant's "permanent physical restrictions as a result of injury from the industrial accident." In other words, the medical panel was instructed to make findings on "those conditions which were caused by the industrial accident." Any deficiency in the ALJ's factual findings would therefore be harmless. *See Certified Bldg. Maint. v. Labor Comm'n*, 2012 UT App 240, ¶¶ 9–11, 285 P.3d 831 (employing the harmlessness standard when there was a claim

that an ALJ's interim findings were inadequate); *Blair v. Labor Comm'n*, 2011 UT App 248, ¶ 16, 262 P.3d 456 (same).

## V. Substantial Evidence

¶28    Employer argues that the Commission erred in adopting the medical panel's report "when there was other substantial evidence supporting a finding contrary to the medical panel's [finding]." In support, Employer cites Dr. Chung's analysis and other evidence it claims conflicts with the panel's findings regarding Claimant's functional and medical capacity.

¶29    As we have explained, "[a]n administrative law judge may base [his or her] finding and decision on the report of . . . a medical panel." Utah Code Ann. § 34A-2-601(2)(e)(i)(A) (LexisNexis Supp. 2013). Nevertheless, "an administrative law judge is not bound by a report . . . if other substantial conflicting evidence in the case supports a contrary finding." *Id*. § 34A-2-601(2)(e)(ii). Employer points to this language referring to "other substantial conflicting evidence" and asserts that "other substantial conflicting evidence" exists in this case that supports a finding contrary to the panel's finding. This "other substantial conflicting evidence," Employer contends, precluded the ALJ from admitting and considering the medical panel report.

¶30    The statutory language that an administrative law judge "is not bound by a [medical panel] report . . . if other substantial conflicting evidence . . . supports a contrary finding," *id*., is more pertinent to circumstances where the administrative law judge has adopted a finding contrary to the medical panel report. *See, e.g.*, *Greyhound Lines, Inc. v. Wallace*, 728 P.2d 1021, 1022–23 (Utah 1986) (rejecting a plaintiff's challenge to a finding where the Commission chose to accept statements of one physician instead of the medical panel report); *Straub v. Labor Comm'n*, 1999 UT App 192U, paras. 2–4 (refusing to grant relief where a petitioner argued that the ALJ's findings were contrary to those rendered by the medical panel and that the ALJ was bound by the medical panel's findings). The presence of conflicting evidence does not negate the administrative law judge's discretion to base his or her findings on

the medical panel report. *See* Utah Code Ann. § 34A-2-601(2)(e). We agree with the Commission that the existence of conflicting evidence is not "a sufficient reason to disregard a medical panel report or exclude the report from the evidence." This is especially true in light of the fact that medical panels are used precisely because there are conflicting medical opinions. *See* Utah Admin. Code R602-2-2 (stating that a medical panel will be utilized by an administrative law judge when a significant medical issue has been shown by conflicting medical reports).

¶31 Employer's argument that substantial evidence contradicts the medical panel's report boils down to an argument that "more weight should have been given to the evidence in its favor." *See Timpanogos Hosp. v. Labor Comm'n*, 2011 UT App 106, ¶ 7, 251 P.3d 855. But this court may not reweigh the evidence because "assigning such weights is the prerogative of the Commission." *Id.*; *see also Migliaccio v. Labor Comm'n*, 2013 UT App 51, ¶ 7, 298 P.3d 676 ("It is not the role of this court to reweigh the evidence and substitute our conclusion for that of the Commission." (citation and internal quotation marks omitted)). Employer has failed to demonstrate that the Commission's findings are not supported by substantial evidence. *See Swift Transp. v. Labor Comm'n*, 2014 UT App 104, ¶ 8, 326 P.3d 678 ("We will not disturb the Commission's factual findings unless the party challenging the findings demonstrates that a finding is not supported by substantial evidence."). Accordingly, we will not set aside the Commission's findings.

## VI. Attorney Fees

¶32 As a final matter, Claimant requests an award of attorney fees and costs incurred on appeal pursuant to rules 33 and 34 of the Utah Rules of Appellate Procedure. Claimant asserts that Employer's petition for judicial review is frivolous and that he is therefore entitled to attorney fees and costs.

¶33 Rule 33 provides that if an appellate court determines that an appeal is "either frivolous or for delay, it shall award just damages, which may include single or double costs, as defined in

Rule 34, and/or reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(a). A frivolous appeal is "one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id*. R. 33(b). "But the imposition of such a sanction is a serious matter and only to be used in egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions." *Redd v. Hill*, 2013 UT 35, ¶ 28, 304 P.3d 861. "Sanctions are appropriate [only] for appeals obviously without merit, with no reasonable likelihood of success, and which result in the delay of a proper judgment." *Id*. (citation and internal quotation marks omitted). Claimant has not demonstrated that this is an "egregious case[]," and we therefore conclude that Claimant is not entitled to an award of attorney fees. *See id.* However, we grant Claimant's request for costs incurred on appeal because we are not disturbing the Commission's order. *See* Utah R. App. P. 34(a) ("[I]f a judgment or order is affirmed, costs shall be taxed against appellant unless otherwise ordered . . . ."); *see also id.* R. 34(e) ("In all other matters before the court, including appeals from an agency, costs may be allowed as in cases on appeal from a trial court.").

CONCLUSION

¶34 For the foregoing reasons, we allow the Commission's order to stand.

———————